CONFORM COPY

1   DAVID J. STEELE, CA Bar No. 209797
    Email:  djslit@cph.com
2   CHRISTIE, PARKER & HALE, LLP
    3501 Jamboree Road, Suite 6000-North Tower
3   Newport Beach, CA  92660
    Telephone: (949) 476-0757
4   Facsimile: (949) 476-8640

5   HOWARD A. KROLL, CA Bar No. 100981
    Email:  howard.kroll@cph.com
6   CHRISTIE, PARKER & HALE, LLP
    350 W. Colorado Boulevard, Suite 500
7   Pasadena, CA  91105
    Telephone: (626) 795-9900
8   Facsimile:  (626) 577-8800

9   SARAH B. DEUTSCH (*pro hac vice* pending)
    Email:  sarah.b.deutsch@verizon.com
10  VERIZON CORPORATE RESOURCES GROUP LLC
    1320 North Court House Road, Suite 900
11  Arlington, VA  22201
    Telephone: (703) 351-3044
12  Facsimile:  (703) 351-3670

13  Attorneys for Plaintiffs
    VERIZON CALIFORNIA INC.
14  VERIZON TRADEMARK SERVICES LLC
    VERIZON LICENSING COMPANY
15

16                  UNITED STATES DISTRICT COURT

17               CENTRAL DISTRICT OF CALIFORNIA

18                       WESTERN DIVISION

19  VERIZON CALIFORNIA INC.;          Case No.
    VERIZON TRADEMARK SERVICES
20  LLC; and VERIZON LICENSING        CV09-0613 CAS (JCx)
    COMPANY,
21                                    COMPLAINT FOR
                 Plaintiffs,          CYBERSQUATTING AND
22                                    CONTRIBUTORY
          vs.                         CYBERSQUATTING
23
    LEAD NETWORKS DOMAINS
24  PRIVATE LIMITED; NARESH MALIK     DEMAND FOR TRIAL BY JURY
    a/k/a NICK M.; MAHESH MALIK;
25  KEVIN DASTE; and DOES 1-100,
                                      *[An application requesting this*
26               Defendants.          *document be filed under seal is being*
                                      *concurrently filed herewith.]*
27

28

2009 JAN 27  PM 12: 48

FILED

CLERK US DISTRICT COURT
CENTRAL DIST OF CALIF
LOS ANGELES

BY

CHRISTIE, PARKER & HALE, LLP

Plaintiffs, VERIZON CALIFORNIA INC., VERIZON TRADEMARK SERVICES LLC, and VERIZON LICENSING COMPANY (collectively "Plaintiffs"), by and through their attorneys, Christie, Parker & Hale, LLP, file their complaint against LEAD NETWORKS DOMAINS PRIVATE LIMITED, NARESH MALIK a/k/a NICK M., MAHESH MALIK, KEVIN DASTE and DOES 1-100 (collectively "Defendants"), for injunctive relief and damages as follows:

### Subject Matter Jurisdiction and Venue

1.      This is an action for cybersquatting under 15 U.S.C. § 1125(d). This Court has subject matter jurisdiction over the claims pursuant to 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331 and 1338.

2.      Venue is proper in this Judicial District as to Lead Networks Domains Private Limited, Naresh Malik a/k/a Nick M., and Mahesh Malik pursuant to 28 U.S.C. § 1391(d) as an alien may be sued in any district.

3.       Venue is proper in this Judicial District as to Kevin Daste pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claim and the threatened and actual harm to Plaintiffs occurred in this District by reason of Kevin Daste's conduct as alleged below.

### Parties and Personal Jurisdiction

4.      Plaintiff Verizon California Inc. is a California corporation with its principal place of business in Thousand Oaks, California ("Verizon California").

5.      Plaintiff Verizon Trademark Services LLC is a Delaware limited liability company with its principal place of business in Arlington, Virginia ("Verizon Trademark Services").

6.      Plaintiff Verizon Licensing Company is a Delaware corporation with its principal place of business in Arlington, Virginia ("Verizon Licensing").

7.      Plaintiffs are informed and believe and on that basis allege that Defendant Lead Networks Domains Private Limited ("Lead Networks") is a

business organized in India. This Court has personal jurisdiction over Lead Networks because it conducts business within this district related to the unlawful activities at issue in this Complaint, and operates a data center within the United States. The harm suffered by Plaintiffs flows directly from the business conducted by this Defendant within this district.

8. Plaintiffs are informed and believe and on that basis allege that Defendant Naresh Malik a/k/a Nick M is an individual residing in India. This Court has personal jurisdiction over Naresh Malik because he has conducted systematic and continuous business within California related to the unlawful activities at issue in this Complaint. The harm suffered by Plaintiffs flows directly from the business conducted by this Defendant within this district.

9. Plaintiffs are informed and believe and on that basis allege that Defendant Mahesh Malik is an individual residing in India. This Court has personal jurisdiction over Mahesh Malik because he has conducted systematic and continuous business within California related to the unlawful activities at issue in this Complaint. The harm suffered by Plaintiffs flows directly from the business conducted by this Defendant within this district.

10. Plaintiffs are informed and believe and on that basis allege that Defendant Kevin Daste is an individual residing in New Orleans, Louisiana. This Court has personal jurisdiction over Kevin Daste because he has conducted systematic and continuous business within California related to the unlawful activities at issue in this Complaint. The harm suffered by Plaintiffs flows directly from the business conducted by this Defendant within this district.

11. Plaintiffs are not aware of the true names and capacities of Defendants named in this Complaint as Does 1-100, inclusive, and therefore brings this action against these defendants by such fictitious names. Plaintiffs will amend this Complaint to allege these defendants' true names and capacities when ascertained.

12.     Lead Networks, Naresh Malik, and Mahesh Malik (collectively the "Registrar Defendants") each are working together or have worked together as a single entity, and in collusion with each other, for the purpose of perpetrating the unlawful activities complained of in this Complaint.

13.     At all times material to this action, each of the Registrar Defendants was the agent, servant, employee, partner, alter ego, subsidiary, or joint venturer of each of the other Registrar Defendants, and the acts of each of Registrar Defendant were in the scope of such relationship; in doing the acts and failing to act as alleged in this Complaint, each of the Registrar Defendants acted with the knowledge, permission, and the consent of each of the other Registrar Defendants; and each of Registrar Defendants aided and abetted the other Registrar Defendants in the acts or omissions alleged in this Complaint.

14.     The Registrar Defendants, Kevin Daste, and Does 1-100, (collectively the "Defendants") each are working together or have worked together, and in collusion with each other, for the purpose of perpetrating the unlawful activities complained of in this Complaint.

## The Businesses of Plaintiffs

### (a) Plaintiffs' Use of the VERIZON and VERIZON WIRELESS Trademarks

15.     In 2000, Bell Atlantic Corporation and GTE Corporation merged to form Verizon Communications Inc. ("Verizon Communications"). Today, Verizon Communications, its subsidiaries and affiliates, including Plaintiffs Verizon California, Verizon Trademark Services and Verizon Licensing, form one of the largest, well-known telecommunications companies in the world. Verizon Communications' subsidiaries (collectively referred to as the "Verizon Companies") provide a full array of communications and entertainment product and service offerings, including local, long distance, and wireless telephone services; Internet access; television services; phones; and related equipment. The

Verizon Companies have extensive operations in the United States and some of the Verizon Companies also have operations throughout the world.

16.    A publicly traded company on the New York Stock Exchange, Verizon Communications generates annual consolidated operating revenues of over ninety-three billion dollars ($93,000,000,000.00), is a Dow 30 company, and ranks in the top twenty (20) of the Fortune 500 list. The Verizon Companies employ a diverse workforce of nearly two hundred and thirty five thousand (235,000) employees.

17.    Verizon Trademark Services owns the VERIZON and VERIZON WIRELESS trademarks and trade names, as well as logo versions that include a "V Design" above or to the left of the word marks VERIZON and VERIZON WIRELESS (collectively, the "VERIZON Marks").

18.    Verizon Licensing is the exclusive licensor of the VERIZON Marks and has granted, directly or indirectly, licenses to use the VERIZON Marks to its parent company, Verizon Communications, and to the various Verizon Companies.

19.    The VERIZON Marks were publicized as early as the first week in April 2000, when Cellco Partnership d/b/a Verizon Wireless, then doing business as Bell Atlantic Mobile, began doing business as "Verizon Wireless." Upon the launch of Verizon Wireless, on or about April 3, 2000, the VERIZON WIRELESS name and trademark and related logos were featured on the Internet, in television and radio advertisements, and in stories published in major newspapers throughout the United States.

20.    The Verizon Companies have offered and provided a full array of communications and entertainment products and services under the VERIZON Marks.

21.    Currently, the Verizon Companies' wireline business uses the VERIZON Marks in connection with the provision of telephone and broadband

CHRISTIE, PARKER & HALE, LLP

products and services to consumer and business customers in twenty five (25) states (including California where such products and services are provided by Plaintiff Verizon California) and the District of Columbia serving a territory consisting of more than 37 million access lines and 8.4 million broadband connections. Telephone and broadband products and services include voice and data transport, enhanced and custom calling features, network access, directory assistance, private lines, public telephones, nationwide long distance services, customer premises equipment distribution, data solutions and systems integration, billing and collections, Internet access services and inventory management services. The Verizon Companies' wireline business also provides entertainment products and services, including digital television, video on demand and online games. Additionally, some of the Verizon Companies provide telephone and broadband products and services to customers outside of the United States.

22.    The VERIZON Marks are widely known and recognized among consumers and members of the telecommunications industry.

23.    The VERIZON Marks are unique and distinctive and, as such, designate a single source of origin.

24.    The Verizon Companies spend and have spent many millions of dollars each year since 2000 to extensively advertise and promote VERIZON and VERIZON WIRELESS branded products and services in the United States through a variety of media, including television, radio, print advertisements, direct mail, trade shows, conferences, and the Internet.

25.    As a result of the Verizon Companies' extensive and exclusive use, the VERIZON Marks have developed extensive goodwill in the market and are extremely valuable to the Verizon Companies. Verizon Companies expend substantial effort and expense to protect the VERIZON Marks and the VERIZON Marks' distinctiveness in the marketplace.

26.    Having been widely promoted to the general public, and having exclusively identified the Verizon Companies and their products and services, the VERIZON Marks symbolize the tremendous goodwill associated with the Verizon Companies and are a property right of incalculable value. Further, the VERIZON Marks have long enjoyed unquestionable fame as a result of favorable general public acceptance and recognition.

27.    The VERIZON and VERIZON WIRELESS marks are famous marks protected under 15 U.S.C. § 1125(c).

28.    The Verizon Companies' main Internet websites using the VERIZON Marks and featuring information on many of the products and services of the Verizon Companies can be accessed via the domain names verizon.com verizon.net, and verizonwireless.com. Printouts from the websites at verizon.com, verizon.net and verizonwireless.com evidencing such use of the VERIZON Marks are attached as Exhibit 1.

29.    The VERIZON Marks are valid and enforceable trademarks.

30.    Verizon Trademark Services owns the following United States trademark registrations for its various VERIZON Marks:

| Trademark | Reg. No. | Goods/Services | Reg. Date |
|---|---|---|---|
| VERIZON | 2,886,813 | Various goods and services in Int'l Classes 9, 16, 35, 36, 37, 38, 41, and 42. | 9/21/04 |
| VERIZON | 3,085,712 | Various goods and services in Int'l Classes 9, 38, and 41. | 4/25/06 |
| verizon | 2,879,802 | Various goods and services in Int'l Classes 9, 16, 35, 36, 37, 38, 41, and 42. | 8/31/04 |

CHRISTIE, PARKER & HALE, LLP

| Trademark | Reg. No. | Goods/Services | Reg. Date |
|---|---|---|---|
| VERIZON WIRELESS | 3,077,271 | Various goods and services in Int'l Classes 9, 16, 35, 36, and 38. | 4/4/06 |
| verizon wireless | 2,884,027 | Various goods and services in Int'l Class 38. | 9/14/04 |
| verizon wireless | 3,077,269 | Various goods and services in Int'l Class 9. | 4/4/06 |

Copies of the registration certificates for each registration are attached to this Complaint as Exhibit 2.

### (b) Plaintiffs' Use of the VZ, VZACESS, VZEMAIL, VZGLOBAL, VZVOICE and VZW Trademarks

31.     Verizon Trademark Services owns the VZ, VZACESS, VZEMAIL, VZGLOBAL, VZVOICE and VZW trademarks (collectively, the "VZ Marks").

32.     Verizon Licensing is the exclusive licensor of the VZ Marks, and has granted, directly or indirectly, licenses to use the VZ Marks to the various subsidiaries of Verizon Communications.

33.     The VZ trademark was first used on or about July 3, 2000. The VZW trademark was first used on or about August 15, 2000. The VZACCESS, VZEMAIL, VZGLOBAL and VZVOICE trademarks were first used on or about September 29, 2003.

34.     The Verizon Companies have offered and provided a full array of communications and entertainment products and services under the VZ Marks.

35.     The Verizon Companies use the VZ Marks to provide wireless voice and data services to over 70.8 million customers nationwide and use the VZ

CHRISTIE, PARKER & HALE, LLP

Marks in connection with the provision of the wireless voice and data services in California and in interstate commerce.

36.    The VZ Marks are widely known and recognized among consumers and members of the telecommunications industry.

37.    The VZ Marks are unique and distinctive and, as such, designate a single source of origin.

38.    The Verizon Companies spend and have spent significant amounts of money each year since 2003 to advertise and promote the aforementioned products and services in the United States in connection with the VZ Marks.

39.    As a result of the Verizon Companies' extensive and exclusive use, the VZ Marks have developed extensive goodwill in the market and are extremely valuable to the Verizon Companies. Verizon Companies expend substantial effort and expense to protect the VZ Marks and the VZ Marks' distinctiveness in the marketplace.

40.    Having been widely promoted to the general public, and having exclusively identified the Verizon Companies and their products and services the VZ Marks symbolize the tremendous goodwill associated with the Verizon Companies and are a property right of incalculable value.

38.    The Verizon Companies' main Internet websites using the VZ Marks and featuring information on many of the products and services of the Verizon Companies can be accessed via the domain names verizon.com verizon.net, and verizonwireless.com.  Printouts from the websites at vzw.com, vzw.msn.com and verizon.com evidencing such use of the VZ Marks are attached as Exhibit 3.

39.    The VZ Marks are valid and enforceable trademarks.

40.    Verizon Trademark Services owns the following United States trademark registrations for its VZ Marks:

| Trademark | Reg. No. | Goods/Services | Reg. Date |
|-----------|----------|----------------|-----------|
| VZ | 3,064,237 | Various goods and services in Int'l Classes 16 and 41. | 2/28/06 |
| VZ | 3,490,085 | Various services in Int'l Class 38. | 8/19/08 |
| VZACCESS | 2,973,813 | Various services in Int'l Class 38. | 7/19/05 |
| VZEMAIL | 2,973,814 | Various services in Int'l Class 38. | 7/19/05 |
| VZGLOBAL | 3,083,568 | Various services in Int'l Class 38. | 4/18/06 |
| VZVOICE | 2,973,811 | Various services in Int'l Class 38. | 7/19/05 |
| VZW | 3,319,338 | Various services in Int'l Class 38. | 10/23/07 |

Copies of the registration certificates for each registration are attached to this Complaint as Exhibit 4.

**(c) Plaintiffs' Use of the FIOS and VERIZON FIOS Trademarks**

41.    Verizon Trademark Services owns the FIOS and VERIZON FIOS trademarks (collectively, the "VERIZON FIOS Marks").

42.    Verizon Licensing is the exclusive licensor of the VERIZON FIOS Marks, and has granted, directly or indirectly, licenses to use the VERIZON FIOS Marks to the various subsidiaries of Verizon Communications.

43.    The Verizon Companies wireline business, including Plaintiff Verizon California, have offered and provided communications and entertainment products and services under the VERIZON FIOS Marks since at least as early as August 2004.

CHRISTIE, PARKER & HALE, LLP

44.     The Verizon Companies' services provided under the VERIZON FIOS Marks include broadband and television services. The broadband services are designed to provide the fastest and most powerful Internet access offered by the Verizon Companies. The television services include one hundred percent (100%) all digital programming, movies and sports channels, premium and international channels, expansive HD programming, a video on demand library, interactive features, digital video recording and fiber-quality picture and sound.

45.     The Verizon Companies' services are available to users connected to the Verizon network via the Verizon Companies' "Fiber-To-The-Premises," or FTTP, program. The FTTP program refers to the Verizon Companies' network upgrade that utilizes fiber-optic cables and associated optical electronics instead of copper wire to connect customers to the Verizon network and provide voice services and associated features while offering nearly unlimited bandwidth for an array of data and video applications.

46.     The VERIZON FIOS Marks are unique and distinctive and, as such, designate a single source of origin.

47.     The Verizon Companies spend and have spent significant amounts of money each year since 2004 to advertise and promote the aforementioned products and services in the United States in connection with the VERIZON FIOS Marks.

48.     As a result of the Verizon Companies' extensive and exclusive use, the VERIZON FIOS Marks have developed extensive goodwill in the market and are extremely valuable to the Verizon Companies. The Verizon Companies expend substantial effort and expense to protect the VERIZON FIOS Marks and the VERIZON FIOS Marks' distinctiveness in the marketplace.

49.     Having been widely promoted to the general public, and having exclusively identified the Verizon Companies and their products and services, the VERIZON FIOS Marks symbolize the tremendous goodwill associated with the

Verizon Companies and is a property right of incalculable value.

41.     The Verizon Companies' main Internet websites using the VERIZON FIOS Marks and featuring information on many of the products and services of the Verizon Companies can be accessed via the domain names verizon.com and verizonfios.com, which have used the VERIZON FIOS Marks since at least as early as August 2004. A printout from the website at verizonfios.com evidencing such use of the VERIZON FIOS Marks is attached as Exhibit 5.

42.     The VERIZON FIOS Marks are valid and enforceable trademarks.

43.     Verizon Trademark Services owns the following United States trademark registrations for its various VERIZON FIOS Marks:

| Trademark | Reg. No. | Goods/Services | Reg. Date |
|-----------|----------|----------------|-----------|
| FIOS | 3,001,081 | Various goods and services in Int'l Classes 37 and 38. | 09/27/05 |
| VERIZON FIOS | 3,147,510 | Various goods and services in Int'l Classes 37 and 38. | 09/26/06 |

Copies of the registration certificates for each registration are attached to this Complaint as Exhibit 6.

44.     Plaintiffs have made a considerable investment and have accrued substantial goodwill in the VERIZON Marks, the VZ Marks, and the VERIZON FIOS Marks (collectively the "Plaintiffs' Marks").

### The Business Of Defendants

45.     Plaintiffs are informed and believe and on that basis allege that Lead Networks is a registrar of Internet domain names accredited by the Internet Corporation for Assigned Names and Numbers ("ICANN").

46.     Plaintiffs are informed and believe and on that basis allege that Naresh Malik a/k/a Nick M. and Mahesh Malik operate the day-to-day business of Lead Networks.

47.     Plaintiffs are informed and believe and on that basis allege that Lead Networks is the registrar of record for over 129,000 domain names ("Lead Domain Names").

48.     Plaintiffs are informed and believe and on that basis allege that Daste is the registrant of record for over 8,000 domain names ("Daste Domain Names").

49.     Plaintiffs are informed and believe and on that basis allege that the majority of Lead Domain Names are confusingly similar to famous or distinctive trademarks owned by others. ("Confusingly Similar Domain Names"). A list detailing some of the Confusingly Similar Domain Names is attached to this Complaint as Exhibit 7. Notwithstanding that Defendants have targeted nearly every single famous trademark in existence, for the sake of brevity the list of Exhibit 7 details only one famous trademark for each letter of the alphabet.

50.     Plaintiffs are informed and believe and on that basis allege that many of the Daste Domain Names are confusingly similar to famous or distinctive trademarks owned by others. A list detailing some of these confusingly similar domain names is attached to this Complaint as Exhibit 8. For the sake of brevity the list of Exhibit 8 details only one famous trademark for each letter of the alphabet.

51.     Plaintiffs are informed and believe, and on that basis allege, that one or more of the Defendants was or is the registrant for each of the Lead Domain Names.  Attached to this Complaint as Exhibit 9 is a representative sample of the WHOIS records for the Lead Domain Names.

52.     Plaintiffs are informed and believe, and on that basis allege, that one or more of the Registrar Defendants was or is the registrant for each of the Lead Domain Names.

CHRISTIE, PARKER & HALE, LLP

53.   Plaintiffs are informed and believe, and on that basis allege that Naresh Malik registered, used, or trafficked in, one or more of the Lead Domain Names for his own use. Several of the historic WHOIS records listing Naresh Malik or Nick M. as well as the registrant are attached to this Complaint as Exhibit 10.

54.   Plaintiffs are informed and believe, and on that basis allege Kevin Daste registered, used, or trafficked in, one or more of the Lead Domain Names for his own use. Several of the historic WHOIS records listing Kevin Daste as the registrant are attached to this Complaint as Exhibit 11.

55.   Plaintiffs are informed and believe, and on that basis allege each of the Does 1-100 registered, used, or trafficked in, one or more of the Lead Domain Names for his or her own use.

56.   Plaintiffs are informed and believe and on that basis allege that Defendants operate websites at each of the Confusingly Similar Domain Names which display Hypertext Markup Language ("HTML") links featuring goods or services that are directly competitive with those sold or provided in connection with the famous or distinctive trademarks. Screen captures of several of these websites are attached to this Complaint as Exhibit 12.

57.   Plaintiffs are informed and believe and on that basis allege that the Registrar Defendants actively assist their domain name registrant customers, including Daste, by shielding them from legal claims brought by trademark owners.

58.   Plaintiffs are informed and believe and on that basis allege that the Registrar Defendants intentionally list several false identities and addresses instead of listing the accurate information for the registrants of the Lead Domain Names to conceal the true identities of their customers from trademark owners.

59.   Plaintiffs are informed and believe and on that basis allege that the Registrar Defendants create shell entities to list as the registrant of Lead Domain

Names which are the subject of administrative proceedings. Attached to this Complaint as Exhibit 13 are the records from the Mumbai Registrar of Companies for several of these shell entities.

60.     Plaintiffs are informed and believe and on that basis allege that numerous administrative proceedings filed by trademark owners under ICANN's Uniform Domain Name Dispute Resolution Policy ("UDRP") resulted in orders from the administrative panel transferring Lead Domain Names to trademark owners.  Several UDRP complaints filed against Defendants are attached to this Complaint as Exhibit 14.

61.     Plaintiffs are informed and believe and on that basis allege that in the numerous cases where Lead Domain Names were ordered transferred the Registrar Defendants filed a legal challenge in the Bombay High Court to frustrate the administrative panel's order transferring the domain names. The docket entries for several of these cases are attached to this Complaint as Exhibit 15.

62.     Plaintiffs are informed and believe and on that basis allege that in the numerous legal challenges filed in the Bombay High Court, the pleadings were intentionally procedurally defective to further delay any transfer of domain names.  Examples of docket entries that reflect these deficiencies are attached to this Complaint as Exhibit 16.

63.     Plaintiffs are informed and believe and on that basis allege that during the pendency of many of the legal challenges filed in the Bombay High Court, the Registrar Defendants attempt to sell the domain names to the trademark owner for their financial gain.

### Defendants' Concealment Of Their Identity

64.     Plaintiffs are informed and believe that Defendants employ various means to conceal their true identities and involvement in the registration, use, or

trafficking of the Lead Domain Names, including, by conducting business using numerous shell-entities, fictitious business, and personal names.

65. Plaintiffs are informed and believe that one or more Defendants conduct business as Privacy Protection, B-304, Florida, Y-11, Shastrinagar, Lokhandwala Complex, Andheri (West), Mumbai, Maharashtra, 400053, India.

66. Privacy Protection is listed as the registrant of some of the Lead Domain Names. See Exhibit 9 to this Complaint.

67. Plaintiffs are informed and believe that one or more Defendants conduct business as Private Whois Escrow Domains Private Limited., 707,C-Wing,7th Floor,The Neptune Versova Society, Lokhandwala Complex, 4th Cross Road, Andheri (West), Mumbai, Maharashtra, 400053, India.

68. Private Whois Escrow Domains Private Limited is listed as the registrant of some of the Lead Domain Names. See Exhibit 9 to this Complaint.

69. Plaintiffs are informed and believe that one or more Defendants conduct business as PrivacyProtect.org, Domain Admin, P.O. Box 97, Note - All Postal Mails Rejected, visit Privacyprotect.org, Moergestel, null,5066 ZH, Netherlands.

70. PrivacyProtect.org is listed as the registrant of some of the Lead Domain Names. See Exhibit 9 to this Complaint.

71. Plaintiffs are informed and believe that one or more Defendants has conducted business as Watch My Domain, P.O. Box 121503, Cubai, Dubai, 1000001, United Arab Emirates.

72. Plaintiffs are informed and believe that one or more Defendants has conducted business as Dot Name Mail Services, B-304 Florida, Y-11 Shastri Nagar, Lokhandwala Complex, Andheri(w), Mumbai, Maharashtra, 400053, India.

73.   Plaintiffs are informed and believe that one or more Defendants has conducted business as Comdot Internet Services Private Limited, 5/2, Starsway Society, Juhu Road, Juhu, Mumbai, Maharashta, 400049, India.

74.   Plaintiffs are informed and believe that one or more Defendants has conducted business as Laksh Internet Solutions Private Limited, S.V. Patel Nagar, Mahada Versova, Andheri (W), Mumbai, Maharashtra, India.

75.   Plaintiffs are informed and believe that one or more Defendants has conducted business as Pluto Domains Services Private Limited, 5/2, Starsway Society, Juhu Road, Juhu, Mumbai, Maharashtra, 400049, India.

76.   Plaintiffs are informed and believe that one or more Defendants has conducted business as Compsys Domains Solutions Private Limited, 5/2, Starsway Society, Juhu Road, Juhu, Mumbai, Maharashtra, 400049, India.

77.   Plaintiffs are informed and believe that one or more Defendants has conducted business as Cyber Veillance Private Limited, C/205 Maitri, 24 Bimbisar Nagar, Off Western Express Highway, Goregaon (East), Mumbai, Maharashta, 40065, India.

78.   Privacy Protection, Private Whois Escrow Domains Private Limited, PrivacyProtect.org, Watch My Domain, Dot Name Mail Services, Comdot Internet Services Private Limited, Pluto Domains Services Private Limited, Laksh Internet Solutions Private Limited, Compsys Domains Solutions Private Limited, and Cyber Veillance Private Limited are collectively referred to as the "Lead False Identities."

79.   At all times material to this action, each of Defendants and the Lead False Identities, was the agent, servant, employee, partner, alter ego, subsidiary, or joint venturer of each of the other Defendants and Lead False Identities, and that the acts of each of Defendants and each of the Lead False Identites were in the scope of such relationship, and that in doing the acts and failing to act as alleged in this Complaint, each of Defendants and the Lead False Identities acted

with the knowledge, permission, and the consent of each of the other Defendant and Lead False Identity,  and each of Defendants and Lead False Identities aided and abetted the other Defendants and Lead False Identities in the acts or omissions alleged in this Complaint.

80.    Registrar Defendants have conducted business, or are conducting business, are holding themselves out as, or have held themselves out as one or more of the Lead False Identities.

### Defendants And Their Wrongful Conduct

81.    Plaintiffs have not authorized Defendants to use in any way the Plaintiffs' Marks.

82.    Plaintiffs are informed and believe and on that basis allege that Defendants have registered over two hundred thirty eight (238) domain names which are confusingly similar to the Plaintiffs' Marks, including at least the following:

| | |
|---|---|
| vaerizon.com | veriseon.com |
| vaerizonwireless.com | verisionphones.com |
| varaizon.com | verison-wirless.com |
| varizionwireless.com | verisonbusiness.com |
| varizon.com | verisoncareers.com |
| vedrizonwireless.com | verisonewireless.com |
| veirzon.com | verisonmobile.com |
| verazionwireless.com | verisononline.com |
| verazonwireless.com | verisonpcs.com |
| vereizon.com | verisonphones.com |
| veri8zon.com | verisonpics.com |
| veri9zon.com | verisonprepayed.com |
| veriaonwireless.com | verisonvireless.com |
| veriazon.com | verisonweireless.com |
| verinwireless.com | verisonwerless.com |
| verionfios.com | verisonwiless.com |
| veriononline.com | verisonwireess.com |
| verionswireless.com | verisonwireles.com |
| veriontracker.com | verisonwirelessinternet.com |
| verionwieless.com | verisonwirelles.com |
| veriozen.com | verisonwirelwss.com |
| veriozionwireless.com | verisonwirerles.com |
| veriozn.com | verisonwiress.com |
| veriozonwireless.com | verisonwirless.com |
| veriozonwirless.com | veriszon.com |
| verironwireless.com | veriszonwireless.com |
| verisenwireless.com | verixoncentral.com |

| | | |
|---|---|---|
| 1 | verizenwireles.com | verizonspeed.com |
| | verizinwirless.com | verizonstart.com |
| 2 | verizion22.com | verizonstart.net |
| | verizionmail.com | verizonsuperpage.com |
| 3 | verizionmobile.com | verizontracker.com |
| | verizionwirelessrebates.com | verizonvireless.com |
| 4 | verizionwirles.com | verizonvirusprotection.com |
| | verizionwirless.com | verizonvisaaccountonline.com |
| 5 | verizionyellowpages.com | verizonw.com |
| | verizizonwireless.com | verizonweriles.com |
| 6 | verizkn.com | verizonwhirless.com |
| | veriznowireless.com | verizonwhitepages.com |
| 7 | verizofios.com | verizonwierles.com |
| | verizoinwireless.com | verizonwikreless.com |
| 8 | verizolnwireless.com | verizonwilerless.com |
| | verizon-wirless.com | verizonwirekless.com |
| 9 | verizon1.com | verizonwireleee.com |
| | verizon2.com | verizonwirelees.com |
| 10 | verizonarena.com | verizonwireles.com |
| | verizonbusinessdsl.com | verizonwirelessbilling.com |
| 11 | verizoncarrers.com | verizonwirelessdownloads.com |
| | verizoncellphone.com | verizonwirelessemployment.com |
| 12 | verizoncelluar.com | verizonwirelessgetdiscount.com |
| | verizoncelular.com | verizonwirelessmyprepaid.com |
| 13 | verizoncentrel.com | verizonwirelessmyprepay.com |
| | verizonephones.com | verizonwirelesspixplace.com |
| 14 | verizonfiles.com | verizonwirelesspixs.com |
| | verizonfiosinternet.com | verizonwirelesss.com |
| 15 | verizonfiostv.com | verizonwirelesstheather.com |
| | verizonfiso.com | verizonwirelessvzw.com |
| 16 | verizonfreeringtones.com | verizonwirelesxs.com |
| | verizongames.com | verizonwirelexx.com |
| 17 | verizonhawaii.com | verizonwirelles.com |
| | verizonhotmail.com | verizonwirless.com |
| 18 | verizoninpulse.com | verizonwirelsee.com |
| | verizonireless.com | verizonwirelss.com |
| 19 | verizonjob.com | verizonwiressless.com |
| | verizonless.com | verizonwirfeless.com |
| 20 | verizonmireless.com | verizonwirlesspr.com |
| | verizonmobiles.com | verizonwirrless.com |
| 21 | verizonmyaccount.com | verizonwreless.com |
| | verizonmymsn.com | verizonwwireless.com |
| 22 | verizonmyprepay.com | verizopn.com |
| | verizonnwireless.com | verizowirless.com |
| 23 | verizonon.net | verizwireless.com |
| | verizononlinedsl.com | verkzon.com |
| 24 | verizonphonebook.com | veronwireless.com |
| | verizonphonenumbers.com | verozinwireless.com |
| 25 | verizonpixplace.com | verozonwireless.com |
| | verizonprepaidphone.com | verraizon.com |
| 26 | verizonprepay.com | verrisionwireless.com |
| | verizonrebate.com | verrizon.com |
| 27 | verizonresidential.com | verrizonwireles.com |
| | verizonringbacks.com | verrzonwireless.com |
| 28 | verizonringbacktones.com | versionwireles.com |

| | |
|---|---|
| versisonwireless.com | vrtizonwireless.com |
| verszionwireless.com | vweizon.com |
| verszonwireless.com | vzrizon.com |
| vervizon.com | vzwirelessringtones.com |
| vervizonwireless.com | wbillpayverizonwireless.com |
| verwisonwireless.com | webmailverizon.net |
| verwizon.com | wrizon.com |
| verysonwireless.com | wwwlverizonwireless.com |
| veryzonwireles.com | wwwvarizon.com |
| verzionwireless.com | wwwveraizon.com |
| verzonwireles.com | wwwverizononline.net |
| vevrizonwireless.com | wwwverrizon.com |
| vezrizon.com | vzchat.com |
| viersonwireless.com | vznavagator.com |
| vierzionwireless.com | vzpics.com |
| vierzon.com | vzwdeluxe.com |
| viraizon.com | vzwierless.com |
| virazonwireless.com | vzwpixplace.com |
| vireizon.com | vzwprepay.com |
| virisionwireless.com | vzwpx.com |
| virizonwirelss.com | vzwringtonesdelux.com |
| vironwireless.com | vzxpix.com |
| vironzon.com | wirelesssynchvzw.com |
| virozionwireless.com | wirelesssynvzw.com |
| virozon.com | 22verizion.com |
| virozonwireless.com | activatemyfiosverizon.net |
| virzonewireless.com | berizon.com |
| vizonwireless.com | businessverizon.net |
| vorizanwireless.com | dslstartverizon.com |
| vorizen.com | erizon.com |
| vorizin.com | infospeedverizon.net |
| vorizon.net | myaccountatwwwverizonwireless.com |
| vorzon.com | myaccountverizonwireless.com |
| vriezon.com | myverizonprepaid.com |
| vriszon.com | quickverizon.net |
| vrizonwireless.com | startverizon.net |
| | v-wireless-cellphones.com |

(collectively, the "Infringing Domain Names"). A printout of the whois ownership records for many of these domain names is attached to this Complaint as Exhibit 17.

83.     Plaintiffs are informed and believe and on that basis allege that Daste has registered at least nine (9) of the Infringing Domain Names, including at least the following:

businessverizon.net
verizonvisaaccountonline.com
verizoncelluar.com
verizonprepay.com
verizonmobiles.com

verizonmireless.com
verizonjob.com
verizonwierles.com
verizonwirelessbilling.com

Attached to this Complaint as Exhibit 18 are several of the historic WHOIS records listing Kevin Daste as the registrant.

84.   Plaintiffs are informed and believe and on that basis allege that each of the Infringing Domain Names is confusingly similar to the Plaintiffs' Marks.

85.   Plaintiffs are informed and believe and on that basis allege that Defendants used the Infringing Domain Names to divert for commercial gain Internet users searching for the Plaintiffs' Marks.

86.   Plaintiffs are informed and believe and on that basis allege that Defendants hosted a website at each of the Infringing Domain Names which displayed HTML links featuring advertisements for goods and services that are directly competitive with those sold or provided in connection with the Plaintiffs' Marks. Screen captures of the websites at many of the Infringing Domain Names are attached to this Complaint as Exhibit 19.

87.   Plaintiffs are informed and believe and on that basis allege that when Internet users clicked on one or more of the displayed HTML links on the website hosted at each of the Infringing Domain Names that Defendants received payments from one or more advertisers, search engines, or affiliate programs.

### Harm to Plaintiffs and the General Public

88.   Defendants' unauthorized registration and use of the Infringing Domain Names is likely to cause confusion, mistake, and deception as to the source or origin of the Infringing Domain Names, and is likely to falsely suggest a sponsorship, connection, license, or association of Defendants, and the Infringing Domain Names with Plaintiffs.

CHRISTIE, PARKER & HALE, LLP

89.     Defendants' activities have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiffs and the long-used and federally registered Plaintiffs' Marks.

90.     Defendants' activities have irreparably harmed, and if not enjoined, will continue to irreparably harm the general public who has an inherent interest in being free from confusion, mistake, and deception.

## FIRST CAUSE OF ACTION

### [Cybersquatting on the Plaintiffs' Marks

### Under 15 U.S.C. § 1125(d)]

91.     Plaintiffs reallege and incorporate by reference Paragraphs 1 through 90 as though fully set forth here.

92.     Plaintiffs are informed and believe and on that basis allege that Defendants registered and used the Infringing Domain Names.

93.     The Plaintiffs' Marks were distinctive and federally registered at the USPTO at the time Defendants registered and used the Infringing Domain Names.

94.     The Infringing Domain Names are confusingly similar to the Plaintiffs' Marks.

95.     Plaintiffs are informed and believe and on that basis allege Defendants registered, trafficked in, or used the Infringing Domain Names in bad faith and with a bad faith intent to profit from the goodwill long established by Plaintiffs in the Plaintiffs' Marks.

96.     Defendants do not have any intellectual property rights or any other rights in the Plaintiffs' Marks.

97.     Plaintiffs are informed and believe and on that basis allege that none of the Infringing Domain Names consist of the legal name of any Defendants, nor a name that is otherwise commonly used to identify any Defendants.

CHRISTIE, PARKER & HALE, LLP

98.    Plaintiffs are informed and believe and on that basis allege that Defendants have not made any prior use of any of the Infringing Domain Names in connection with the *bona fide* offering of any goods or services.

99.    Plaintiffs are informed and believe and on that basis allege that Defendants have not made any *bona fide* fair use of the Plaintiffs' Marks on a website accessible under any of the Infringing Domain Names.

100.    Plaintiffs are informed and believe and on that basis allege that Defendants registered and used the Infringing Domain Names to divert consumers from Plaintiffs' websites to websites accessible under the Infringing Domain Names for Defendants' commercial gain by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of these websites.

101.    Defendants' registration, use, or trafficking in the Infringing Domain Names constitutes cybersquatting in violation of 15 U.S.C. § 1125(d), entitling Plaintiffs to relief.

102.    The Registrar Defendants engaged in the above activities complained of above with a bad faith intent to profit from the registration or maintenance of the Infringing Domain Names.

103.    By reason of Defendants' acts alleged herein, Plaintiffs' remedy at law is not adequate to compensate them for the injuries inflicted by Defendants. Accordingly, Plaintiffs are entitled to preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

104.    By reason of Defendants' acts alleged herein, Plaintiffs are entitled to recover Defendants' profits, actual damages and the costs of the action, or statutory damages under 15 U.S.C. § 1117, on election by Plaintiffs, in an amount of one hundred thousand dollars ($100,000) per domain name infringement.

105.    This is an exceptional case making Plaintiffs eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

**SECOND CAUSE OF ACTION**

**[Registrar Defendants' Contributory Cybersquatting on the
Plaintiffs' Marks Under 15 U.S.C. § 1125(d)]**

106.   Plaintiffs reallege and incorporate by reference Paragraphs 1 through 105 as though fully set forth here.

107.   Plaintiffs are informed and believe and on that basis allege that the Registrar Defendants directly orchestrate the process of providing UDRP dispute providers with false registrant information and filing frivolous and time consuming appeals to UDRP transfer orders in Indian Court.

108.   Plaintiffs are informed and believe and on that basis allege that the Registrar Defendants receive pecuniary compensation from their clients for providing this UDRP evasion service.

109.   Plaintiffs are informed and believe and on that basis allege that the Registrar Defendants intentionally induce their registrant clients to commence and continue the registration, use, or trafficking in the Infringing Domain Names.

110.   Plaintiffs are informed and believe and on that basis allege that the Registrar Defendants have supplied and continue to supply domain name registration and renewal services to their registrant clients with actual or constructive knowledge that their services are being used to cybersquat on Plaintiffs' Marks.

111.   Plaintiffs are informed and believe and on that basis allege that the Registrar Defendants have supplied and continue to supply UDRP evasion services to their registrant clients with actual or constructive knowledge that their services are being used to cybersquat on Plaintiffs' Marks.

112.   Plaintiffs are informed and believe and on that basis allege that the Registrar Defendants have direct control over the domain name registration and renewal services provided through Lead Networks and monitor the same.

113.   Plaintiffs are informed and believe and on that basis allege that the Registrar Defendants have direct control over the provision of false and misleading WHOIS data to the public on behalf of their registrants and monitor the same.

114.   Plaintiffs are informed and believe and on that basis allege that the Registrar Defendants have direct control over the Indian companies that they have created to institute sham appeals to UDRP transfer orders and operate the same.

115.   Plaintiffs are informed and believe and on that basis allege that the Registrar Defendants have direct control over the institution of sham Indian appeals and coordinate with their clients to provide the services of the attorney who files the sham complaints.

116.   Registrar Defendants conduct alleged herein constitutes contributory cybersquatting in violation of 15 U.S.C. § 1125(d), entitling Plaintiffs to relief.

117.   By reason of Registrar Defendants' acts alleged herein, Plaintiffs' remedy at law is not adequate to compensate them for the injuries inflicted by Registrar Defendants. Accordingly, Plaintiffs are entitled to preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

118.   By reason of Registrar Defendants' acts alleged herein, Plaintiffs are entitled to recover Registrar Defendants' profits, actual damages and the costs of the action, or statutory damages under 15 U.S.C. § 1117, on election by Plaintiffs, in an amount of one hundred thousand dollars ($100,000) per domain name infringement.

119.   This is an exceptional case making Plaintiffs eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

**Request For Relief**

Therefore, Plaintiffs respectfully request judgment as follows:

1.     That the Court enter a judgment that all Defendants have:

(a)   violated the rights of Plaintiffs in the Plaintiffs' Marks in violation of 15 U.S.C. § 1125(d);

(b)   That Defendants be ordered to transfer every domain name they own which is identical or confusingly similar to the Plaintiffs' Marks to Plaintiff Verizon Trademark Services;

2.   That Defendants, their agents, representatives, employees, assigns and suppliers, and all persons acting in concert or privity with Defendants be preliminarily and permanently enjoined from the following activities:

(a)   Registering or using, in any manner, any Internet domain name that incorporates, in whole or in part, the Plaintiffs' Marks, or any name, mark or designation confusingly similar thereto;

(b)   Using any of the Plaintiffs' Marks, or any other name, mark, designation or depiction in a manner that is likely to cause confusion regarding whether Defendants are affiliated or associated with or sponsored by Plaintiffs;

(c)   Registering any Internet domain name that incorporates, in whole or in part, the Plaintiffs' Marks, or any name, mark or designation confusingly similar thereto;

(d)   Registering any domain name without providing complete and accurate contact information, including Defendants' full legal name as the registrant, and not maintaining complete and accurate contact information, including Defendants' full legal name as the registrant;

(e)   Cybersquatting against Plaintiffs or any violation of Plaintiffs' trademark rights; and

(f)   Assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs 2(a) through 2(e) above;

3.      That Defendants be ordered to engage in corrective advertising to the extent necessary to correct any consumer confusion or misperceptions resulting from Defendants' unlawful acts complained of above;

4.      That Defendants be ordered to account to Plaintiffs for, and disgorge, all profits they have derived by reason of the unlawful acts complained of above;

5.      That Defendants be ordered to pay damages, and that those damages be trebled, under 15 U.S.C. § 1117;

6.      That Defendants be ordered to pay statutory damages under 15 U.S.C. § 1117(d), on election by Plaintiffs, in an amount of One Hundred Thousand Dollars ($100,000) per domain name infringement;

7.      That Defendants be ordered to pay Plaintiffs' reasonable attorney fees, prejudgment interest, and costs of this action under 15 U.S.C. § 1117;

8.      That Defendants be ordered to file with the Court and serve upon Plaintiffs a written report under oath setting forth in detail the manner and form in which Defendants have complied with the injunction and judgment within thirty (30) days after the service of the injunction and judgment upon Defendants; and

9.      That Plaintiffs be awarded such other relief as may be appropriate.

CHRISTIE, PARKER & HALE, LLP

DATED: January 27, 2008          By _____
                                      David J. Steele
                                      Howard A. Kroll

                                      Attorneys for Plaintiffs
                                      VERIZON CALIFORNIA INC.
                                      VERIZON TRADEMARK SERVICES LLC
                                      VERIZON LICENSING COMPANY

**DEMAND FOR TRIAL BY JURY**

Plaintiffs, VERIZON CALIFORNIA INC., VERIZON TRADEMARK SERVICES LLC, and VERIZON LICENSING COMPANY, hereby demand a trial by jury to decide all issues so triable in this case.

CHRISTIE, PARKER & HALE, LLP

DATED:  January 27, 2008     By _____

David J. Steele
Howard A. Kroll
Attorneys for Plaintiffs

VERIZON CALIFORNIA INC.
VERIZON TRADEMARK SERVICES LLC
VERIZON LICENSING COMPANY

SCL IRV1116243.2-*-01/27/09 10:24 AM