1  DAVID J. STEELE, CA Bar No. 209797
   Email:  djslit@cph.com
2  CHRISTIE, PARKER & HALE, LLP
   18101 Von Karman Avenue, Suite 1950
3  Irvine, CA  92612-0163
   Telephone: (949) 476-0757
4  Facsimile:  (949) 476-8640

5  HOWARD A. KROLL, CA Bar No. 100981
   Email:  howard.kroll@cph.com
6  CHRISTIE, PARKER & HALE, LLP
   350 West Colorado Boulevard, Suite 500
7  Pasadena, California 91105
   Telephone: (626) 795-9900
8  Facsimile:  (626) 577-8800

9  SARAH B. DEUTSCH (Admitted *pro hac vice*)
   Email:  sarah.b.deutsch@verizon.com
10 VERIZON CORPORATE RESOURCES GROUP LLC
   1320 North Court House Road, Suite 900
11 Arlington, VA 22201
   Telephone: (703) 351-3044
12 Facsimile:  (703) 351-3670

13 Attorneys for Plaintiffs/Judgment Creditors
   VERIZON CALIFORNIA INC.
14 VERIZON TRADEMARK SERVICES LLC
   VERIZON LICENSING COMPANY
15
                     UNITED STATES DISTRICT COURT
16
                     CENTRAL DISTRICT OF DISTRICT
17
                          WESTERN DIVISION

18 VERIZON CALIFORNIA INC.;          Case No. CV 09-00613 ABC (CWx)
   VERIZON TRADEMARK
19 SERVICES LLC; and VERIZON         **APPENDIX OF AUTHORITIES**
   LICENSING COMPANY,                **NOT AVAILABLE IN THE**
20                                    **FEDERAL REPORTER CITED IN**
              Plaintiffs,            **PLAINTIFFS' MEMORANDUM**
21                                    **OF POINTS AND AUTHORITIES**
         vs.                         **IN SUPPORT OF APPLICATION**
22                                    **FOR AN ORDER TO SHOW**
   LEAD NETWORKS DOMAINS            **CAUSE REGARDING THE**
23 PRIVATE LIMITED; NARESH          **APPOINTMENT OF A**
   MALIK a/k/a NICK M.; MAHESH      **PERMANENT RECEIVER**
24 MALIK; KEVIN DASTE; and
   DOES 1-100,
25                                   **Hon. Audrey B. Collins**
              Defendants.
26

27

28

Plaintiffs/Judgment Creditors Verizon California Inc., Verizon Trademark Services LLC, and Verizon Licensing Company submit the following non-published authorities cited in their Memorandum of Points and Authorities in Support of their *Ex Parte* Application for an Order to Show Cause Regarding the Appointment of a Permanent Receiver that are not available in the Federal Reporter.

**APPENDIX**

<u>**Cases**</u>                                                                    <u>**Exhibit No.**</u>

*Office Depot, Inc. v. Zuccarini,*
          2007 U.S. DIST. LEXIS 69774 (N.D. Cal. Sept. 10, 2007) ............. 1

*Bosh v. Zavala,*
          Case No. 08-CV-04851-FMC (C.D. Cal. Sept. 24, 2009) ............... 2

*Neiman Marcus Group, Inc. et al v. Rivard et al.,*
          Case No. CV-09-60594-WPD (S.D. Fla. July 28, 2009) ................. 3

*Verizon California Inc. v. OnlineNIC, Inc.,*
          Case No. C 08-2832-JF (N.D. Cal. May 13, 2009) .......................... 4

CHRISTIE, PARKER & HALE, LLP

Dated:  March 11, 2011          By   /s/ David J. Steele
                                                    David J. Steele
                                                    Howard A. Kroll

                                                    Attorneys for Plaintiffs/Judgment Creditors
                                                    VERIZON CALIFORNIA INC.
                                                    VERIZON TRADEMARK SERVICES LLC
                                                    VERIZON LICENSING COMPANY

LLB IRV1120702.1-*-03/11/11 4:24 PM

CHRISTIE, PARKER & HALE, LLP

# Exhibit 1



LEXSEE 2007 U.S. DIST. LEXIS 69774

**OFFICE DEPOT, INC., Plaintiff, v. JOHN ZUCCARINI, et al., Defendants.**

**No. C 06-mc-80356 SI**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**621 F. Supp. 2d 773; 2007 U.S. Dist. LEXIS 69774**

**September 10, 2007, Decided**
**September 10, 2007, Filed**

**SUBSEQUENT HISTORY:** Stay granted by, in part, Stay denied by, in part Office Depot, Inc. v. Zuccarini, 2007 U.S. Dist. LEXIS 86615 (N.D. Cal., Nov. 14, 2007)

**PRIOR HISTORY:** Office Depot, Inc. v. Zuccarini, 488 F. Supp. 2d 920, 2007 U.S. Dist. LEXIS 53121 (N.D. Cal., 2007)

**COUNSEL:** [**1] For Office Depot, Inc., Plaintiff: Michael Woodrow De Vries, LEAD ATTORNEY, Latham & Watkins LLP, Costa Mesa, CA.

John Zuccarini, doing business as Country Walk, Defendant, Pro se, Stuart, FL.

For DS Holdings, LLC, Miscellaneous: Henry M. Burgoyne, III, LEAD ATTORNEY, Karl Stephen Kronenberger, LEAD ATTORNEY, Kronenberger Burgoyne, LLP, San Francisco, CA.

**JUDGES:** SUSAN ILLSTON, United States District Judge.

**OPINION BY:** SUSAN ILLSTON

**OPINION**

[*774] **ORDER GRANTING APPLICATION FOR APPOINTMENT OF RECEIVER**

On September 7, 2007, the Court heard argument on the ex parte application of assignee DS Holdings, LLC ("DS Holdings") for appointment of a receiver to aid in the turnover of internet domain names owned by judgment debtor John Zuccarini, so that they may be auctioned off to satisfy the judgment. Having considered the arguments of the parties and the papers submitted, and for good cause shown, the Court hereby GRANTS DS Holdings' motion.

**BACKGROUND**

On December 14, 2000, the District Court for the Central District of California entered a judgment for Office Depot, against Zuccarini individually and d.b.a. "Country Walk," in the amount of $ 100,000 with an additional $ 5,600 due in attorney's fees. Office Depot subsequently assigned [**2] the right to receive all payments under the judgment, including interest, to DS Holdings. On December 19, 2006, this Court issued a Writ of Execution of Judgment, pursuant to California Code of Civil Procedure section 699.510, for the recovery of Zuccarini's outstanding debt. On February 20, 2007, this Court issued an order requiring the production and preservation of documents relating to Zuccarini's substantial domain name portfolio. The Court subsequently denied, as procedurally improper, a request by DS Holdings to add pseudonyms used by Zuccarini to

Exhibit 1
Page 2

Case 2:09-cv-00613-ABC-CW   Document 134-1   Filed 03/11/11   Page 5 of 24   Page ID #:3321

Page 2

621 F. Supp. 2d 773, *774; 2007 U.S. Dist. LEXIS 69774, **2

the Writ of Execution of Judgment. Most recently, on May 15, 2007, the Court denied DS Holdings' request for a [*775] turnover order from the Court requiring third-party domain name "registrars" to turn over internet domain names owned by Zuccarini.

DS Holdings now seeks the appointment of a receiver to aid in the turnover of Zuccarini's domain names. Zuccarini, acting *pro se,* has filed an opposition to the application, and appeared telephonically at the hearing.

## LEGAL STANDARD

Federal Rule of Civil Procedure 69(a) provides for the execution of money judgments. It states, in pertinent part:

> Process to enforce a judgment for the payment of money [**3] shall be a writ of execution, unless the court directs otherwise. The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable.

Fed. R. Civ. P. 69(a).

California Code of Civil Procedure section 708.620 allows the Court to appoint a receiver to aid in recovery of a money judgment, in certain circumstances. It provides: "The court may appoint a receiver to enforce the judgment where the judgment creditor shows that, considering the interests of both the judgment creditor and the judgment debtor, the appointment of a receiver is a reasonable method to obtain the fair and orderly satisfaction of the judgment." § 708.620.

## DISCUSSION

In opposition to DS Holdings' application for appointment of a receiver, Zuccarini raises a more fundamental issue: whether the Northern District of California is the appropriate place to levy upon the domain names at issue. [1] This is apparently an issue of first [**4] impression.

1   Zuccarini also argues that these proceedings are inappropriate because the district court for the Eastern District of Pennsylvania "retains Federal Jurisdiction for the ownership and use of the domain names that are the subject of this legal action," Oppo. P 2, and has frozen Zuccarini's assets, including the domain names at issue here. The Court has reviewed the injunctions issued by the Eastern District of Pennsylvania related to Zuccarini, and finds that they do not prevent a change in ownership of the domain names at issue. *See* Zuccarini Decl., Exs. 1-3. The injunctions prevent Zuccarini from modifying the ownership of the domain names, but they do not prevent this Court from modifying such ownership. Nor do the injunctions award ownership of the domain names at issue to another party.

The California Code of Civil Procedure provides: "after entry of a money judgment, a writ of execution shall be issued by the clerk of the court upon application of the judgment creditor and shall be directed to the levying officer *in the county where the levy is to be made . . . .*" Cal. Code Civ. P. § 699.510(a) (emphasis added). Thus, the Northern District is the appropriate place to [**5] direct a writ of execution only if it contains "the county where the levy is to be made." Under the California Code of Civil Procedure, levy is "made" in a variety of ways, depending on the type of property. *See id.* §§ 700.010-700.200. [2] In all cases, however, the property [*776] exists in some form in the county. *See id.*

2   The categories of property for which the California Code of Civil Procedure provides procedures for levy are: "Growing crops, timber to be cut or minerals," § 700.020; "Tangible personal property in possession of judgment debtor," § 700.030; "Tangible personal property in possession of third person," § 700.040; "Personal property in custody of levying officer," § 700.050; "Bailed goods not covered by negotiable document of title," § 700.060; "Tangible personal property of going business," § 700.070; "Personal property used as dwelling," § 700.080; "Vehicle, vessel, manufactured home, mobilehome, or commercial coach," § 700.090; "Chattel paper," § 700.100; "Instruments," § 700.110; "Negotiable documents of title," §

Exhibit 1
Page 3

Case 2:09-cv-00613-ABC-CW    Document 134-1    Filed 03/11/11    Page 6 of 24    Page ID #:3322

Page 3

621 F. Supp. 2d 773, *776; 2007 U.S. Dist. LEXIS 69774, **5

700.120; "Securities," § 700.130; "Deposit accounts," § 700.140; "Safe deposit boxes," § 700.150; and "Deposit accounts and safe deposit boxes not exclusively [**6] in name of judgment debtor," § 700.160.

None of these categories clearly cover domain names, though some are roughly analogous.

The first inquiry here, therefore, is whether domain names constitute "property" for purposes of the California Code of Civil Procedure. If they do, the second inquiry is where the property comprising or containing the domain names exists.

These inquiries first require a basic exploration of what a domain name is. Judge Whyte's decision in *Coalition for ICANN Transparency, Inc. v. VeriSign, Inc.,* 464 F. Supp. 2d 948, 951-53 (N.D. Cal. 2006), provides a helpful explanation of domain names, registrars, and registries.

Every computer connected to the Internet has a unique Internet Protocol ("IP") address. IP addresses are long strings of numbers, such as 64.233.161.147. The Internet DNS [3] provides an alphanumeric shorthand for IP addresses. The hierarchy of each domain name is divided by periods. Thus, reading a domain name from right to left, the portion of the domain name to the right of the first period is the top-level domain ("TLD"). TLDs include .com, .gov, .net., and .biz. Each TLD is divided into second-level domains identified by the designation to the left [**7] of the first period, such as "example" in "example.com" or "example.net." . . . . Each domain name is unique and thus can only be registered to one entity.

A domain name is created when it is registered with the appropriate registry operator [4]. A registry operator maintains the definitive database, or registry, that associates the registered domain names with the proper IP numbers for the respective domain name servers. The domain name servers direct Internet queries to the related web resources. A registrant can register a domain name only through companies that serve as registrars for second level domain names. Registrars accept registrations for new or expiring domain names, connect to the appropriate registry operator's TLD servers to determine whether the name is available, and register available domain names on behalf of registrants. . . .

The majority of domain name registrations for commercial purposes utilize the .com TLD. . . .

. . . .

In the past ICANN [5] has selected the registry operator for the .com and .net TLDs through a bidding process. Once a registry operator is selected, it serves as the sole registry operator for the applicable TLD registry (.com or .net) until the [**8] expiration of the registry agreement. Currently, VeriSign is the registry operator for the .com and .net domains pursuant to written registry [*777] agreements between ICANN and VeriSign.

*Id.* at 951-53 (citations omitted).

    3  Domain name system.
    4   Registry operators are also referred to simply as "registries."
    5   "ICANN is a private not-for-profit corporation that coordinates the Internet domain name system ('DNS') on behalf of the United States Department of Commerce." *Id.* at 951.

In this case, DS Holdings sought a writ of execution in this district because the .net and .com registry, VeriSign, is located here. The registrars of the domain names at issue, however, are not located in this district; they are located in Virginia, Germany, Washington, and Israel. One issue, therefore, is whether the domain names exist at the registry, or at the registrars. Before reaching this issue, however, the Court must address whether, even if they exist in this district, domain names are "property" subject to levy under the California Code of Civil Procedure.

Exhibit 1
Page 4

621 F. Supp. 2d 773, *777; 2007 U.S. Dist. LEXIS 69774, **8

In *Kremen v. Cohen,* 337 F.3d 1024, 1029 (9th Cir. 2003), the Ninth Circuit addressed the issue of "whether registrants have property rights in their domain [**9] names," under California law. The court answered in the affirmative, concluding that a registrant has "an intangible property right in his [or her] domain name . . . ." *Id.* at 1030. [6]

> 6    The Supreme Court of Virginia reached the opposite conclusion in *Network Solutions, Inc. v. Umbro International, Inc.,* 259 Va. 759, 529 S.E.2d 80, 86-87 (Va. 2000), holding that domain name registration creates merely a contract for services, not an intangible property right, and under Virginia law, contractual rights to services could not be garnished to satisfy a money judgment.

As "intangible property," domain names appear to be covered by the California Code of Civil Procedure levy provisions. Section 695.010 thereof provides: "Except as otherwise provided by law, *all property* of the judgment debtor is subject to enforcement of a money judgment." (emphasis added). Section 699.710 provides, in pertinent part, that "all property that is subject to enforcement of a money judgment . . . is subject to levy under a writ of execution to satisfy a money judgment." Accordingly, the Court concludes that domain names owned by Zuccarini and existing in California are subject to levy under a writ of execution.

As mentioned, [**10] the second issue is whether the domain names are located in this district. DS Holdings contends that because the .com and .net registry, VeriSign, is located in this district, the domain names at issue are also located here. DS Holdings' argument is strongly supported by the Anticybersquatting Consumer Protection Act of 1999 ("ACPA"), 15 U.S.C. § 1125(d). Under ACPA, Congress provided for *in rem* jurisdiction over domain names, in certain circumstances, "in the judicial district in which the domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name is located . . . ." 15 U.S.C. § 1125(d)(2)(A). ACPA also provides: "In an in rem action under this paragraph, a domain name shall be deemed to have its situs in the judicial district in which . . . the domain name registrar, registry, or other domain name authority that registered or assigned the domain name is located . . . ." *Id.* § 1125(d)(2)(C)-(C)(i). ACPA thus strongly suggests an intent on the part of the United States Congress to treat domain names as property existing in both the location of the registry, and the location of the registrar. *See also Mattel, Inc. v. Barbie-Club.com,* 310 F.3d 293, 302 (2d Cir. 2002) [**11] ("it is the presence of the domain name itself--the 'property that is the subject of the jurisdiction' -- in the judicial district in which the registry or registrar is located that anchors the in rem action and satisfies due process and international comity.").

While ACPA suggests this is the appropriate court to oversee levy of the domain [*778] names, Zuccarini argues that practical considerations suggest otherwise. The registrars handle the day to day management of domain names. The registry, in fact, apparently never interacts with domain name owners. Zuccarini argues, therefore, that anyone who wants to alter the ownership of a domain name, including a sheriff or marshal seeking to execute a judgment, must do so through the registrars. This practical consideration is highlighted by the fact that in this case DS Holdings has interacted solely with the registrars in its attempts to levy upon the domain names. To the Court's knowledge, DS Holdings has not interacted with the registry - VeriSign - and does not seek to do so. *See, e.g.,* Mot. at 7:27-8:2 ("If a [**12] receiver were appointed, the registrars could change the domain names' registration information to name the receiver instead of Zuccarini."). As discussed above, writs of execution are directed to the county where levy is to be made. If these proceedings force the registrars to change the ownership of the domain names, then arguably levy will be made at the locations of the registrars, which in this case, all fall outside of the Northern District. *See* § 701.010 ("when levy is made . . . on a third person, the third person . . . . shall deliver to the levying officer any of the property levied upon that is in the possession or under the control of the third person at the time of levy . . . .").

Despite the day to day control registrars exhibit over the ownership of domain names, however, the registry maintains the records that ultimately determine the existence and ownership of domain names. *See Mattel,* 310 F.3d at 296 n.2 ("The domain name 'registry' . . . is the single official entity that maintains a list ('a registry') of all 'top-level' domain names and that maintains all official records regarding the registrations of such names.") (citing David Bender, *Computer Law* § 3D.03[3] [**13] at 3D-56). In the internet hierarchy, registrars answer to the registries. Furthermore, under

Exhibit 1
Page 5

621 F. Supp. 2d 773, *778; 2007 U.S. Dist. LEXIS 69774, **13

ACPA, at least one district court has forced a registry, rather than a registrar, to change the ownership of a domain name. *See America Online, Inc. v. AOL.org,* 259 F. Supp. 2d 449 (E.D. Va. 2003). Thus, if the location of a domain name is determined based on the location of the party with "control" over ownership of the domain name, then the location of the registry is as good as any.

In light of the foregoing, faced with the somewhat metaphysical question of where the intangible property comprising a domain name exists, this Court will follow Congress' suggestion in ACPA that a domain name exists in the location of both the registrar and the registry. As such, this is the appropriate Court to oversee levy upon domain names listed on the VeriSign registry.

The Court also finds that it is appropriate to appoint a receiver, to which the domain names can be transferred. *See* Kronenberger Decl. P 29. DS Holdings has shown that, "considering the interests of both the judgment creditor and the judgment debtor, the appointment of a receiver appointment of a receiver is a reasonable method to obtain [**14] the fair and orderly satisfaction of the judgment." California Code of Civil Procedure § 708.620. Accordingly, the Court GRANTS DS Holdings' request to appoint Michael W. Blacksburg as receiver. [7]

7   The Court is concerned, however, with DS Holdings' ultimate plan to auction off the domain names at issue. As Zuccarini points out, many of the domain names at issue are deliberate misspellings and variations of legitimate domain names, both generic and proprietary. Such names may have legitimate purposes, as counsel argued at the hearing, but they may also be used to misdirect consumers, as apparently Zuccarini himself did.

[*779]  **CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS DS Holdings' request for appointment of a receiver. [Docket No. 18]

**IT IS SO ORDERED.**

Dated: September 10, 2007

SUSAN ILLSTON

United States District Judge

Exhibit 1
Page 6

# Exhibit 2

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CHRISTOPHER BOSH, an individual, | ) | **Case No. 2:08-cv-04851-FMC-MAN**x |
| Plaintiff, | ) ) | **AMENDED ORDER GRANTING** |
| vs. | ) ) ) | **JUDGMENT CREDITOR CHRIS BOSH'S *EX PARTE* APPLICATION FOR TURNOVER ORDER UNDER** |
| LUIS ZAVALA, an individual, | ) ) | **FRCP 69(a ) AND CAL. CIV. PROC. CODE § 699 .040(a) AND FOR** |
| Defendant. | ) ) ) | **INTERIM ORDER PROHIBITING THE TRANSFER OF, OR CHANGE OF REGISTRANT INFORMATION** |
| | ) ) | **CONCERNING, THE DOMAIN NAME HOLDINGS OF JUDGMENT DEBTOR LUIS ZAVALA AND REQUIRING TURNOVER OF DOMAIN NAME HOLDINGS OF JUDGMENT DEBTOR LUIS ZAVALA** |

(The Honorable Florence-Marie Cooper)

Exhibit 2
Page 7   1

[PROPOSED] AMENDED ORDER GRANTING BOSH'S *EX PARTE* APPLICATION
Error! Unknown document property name.

1    The Court GRANTS Judgment Creditor Christopher Bosh's ("Bosh") *Ex Parte*
2    Application for a Turnover Order Under Federal Rule of Civil Procedure 69(a) and
3    California Code of Civil Procedure § 699.040(a) and for Interim Order Prohibiting the
4    Transfer of, or Change of Registrant Information Concerning, the Domain Name
5    Holdings of Judgment Debtor Luis Zavala and Requiring Turnover of Domain Name
6    Holdings of Judgment Debtor Luis Zavala (the "Application").  The Court hereby
7    orders as follows:

8        1.    Judgment Debtor Luis Zavala ("Zavala") and any and each of his agents,
9    servants, employees, registrars, registry, and attorneys, and those persons enabling or
10   in active concert or participation with Zavala shall transfer to Bosh his domain name
11   holdings, including but not limited to those holdings identified in Exhibit F of the
12   Declaration of Marc Trachtenberg in Support of the Application.  This order includes
13   the operator of the ".com" top-level domain, Verisign, Inc., which is hereby ordered to
14   immediately disable Zavala's domain name holdings by changing the nameserver
15   entries to nameserver entries designated by Bosh and transfer Zavala's domain name
16   holdings to Bosh's registrar of choice.

17       2.    No party shall transfer, or in any way participate or assist in the transfer,
18   or otherwise change the registrant information concerning, the domain name holdings
19   of Zavala prior to the transfer of those domain names to Bosh.  Doing so, or any effort
20   to do so, will violate this order, and the party doing so will be in contempt of this
21   Court.
22   SO ORDERED.
23
24   Date: September 24, 2009
                                    _____
25                                  The Honorable Florence-Marie Cooper
                                    United States District Judge
26
27
28

Exhibit 2
Page 8
2

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1  Presented by:
2  Mark L. Smith (SBN: 213829)
   marsmith@winston.com
3  **WINSTON & STRAWN LLP**
   333 South Grand Avenue, 38th Floor
   Los Angeles, CA 90071-1543
4  Telephone: 213-615-1700
   Facsimile: 213-615-1750
5
6  Attorneys for Plaintiff
   CHRIS BOSH
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

Exhibit 2
Page 9  3

[PROPOSED] AMENDED ORDER GRANTING BOSH'S *EX PARTE* APPLICATION

Exhibit 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-60594-CIV-DIMITROULEAS

NEIMAN MARCUS GROUP, INC., and
NM NEVADA TRUST,

       Plaintiffs,

       Magistrate Judge Snow

vs.

       **SEALED**

JACOB RIVARD, a/k/a SHAUN WALLER,
a/k/a G.H. WAGENAARS, a/k/a H.W.
BARNES, and NET41 MEDIA CORP., and
DOES 1-10,

       Defendants.

_____/

## ORDER GRANTING EX PARTE MOTION FOR APPOINTMENT OF RECEIVER AND FOR AN ORDER SEALING THE MOTION AND ORDER

       THIS CAUSE came before the Court on Plaintiffs' Ex Parte Motion for Appointment of Receiver and For an Order Sealing the Motion [DE 27] filed by Plaintiffs The Neiman Marcus Group, Inc., and NM Nevada Trust on September 18, 2009. Based on the evidence submitted and arguments made, the Court makes the following findings and Order:

### FINDINGS OF FACT

       On July 29, 2009, the Court issued its Final Default Judgment and Permanent Injunction ("Final Judgment") [DE 26] against Defendants Jacob Rivard a/k/a Shaun Waller a/k/a G.H. Wagenaars a/k/a H.W. Barnes and NET41 Media Corp, and in favor of Neiman Marcus, in the amount of $300,000. Specifically, the Court determined that:

- Defendants registered, trafficked in, or used at least three domain names, neimanmadcus.com, neinanmarcus.com, and enimanmarcus.com, which are identical or

1

Exhibit 3
Page 10



confusingly similar to the Neiman Marcus Marks in violation 15 U.S.C. §1125(d), the Anticybersquatting Consumer Protection Act (the "ACPA");

- Defendants' violation of 15 U.S.C. §1125(d), the ACPA, was willful;

- As a consequence of this willful conduct, under 15 U.S.C. §1117(d), Plaintiffs are entitled to recover from Defendants damages for infringing Plaintiffs' rights in the amount of $100,000 for each of the three domain names registered in violation of the ACPA for a total monetary judgment of $300,000, jointly and severally, against Defendants, . . .

Final Judgment, ¶¶ 7-9.

The Court also directed that:

- Pursuant to 15 U.S.C. § 1125(d)(1)(C), Defendants and Defendants' officers, directors, employees, representatives, agents, successors-in-interest, parent corporations, subsidiary corporations, affiliated companies, and all other persons, firms or entities acting in concert or participating with them, directly or indirectly, shall relinquish all rights, title, and interest, in all domain names which are confusingly similar to Plaintiffs' NEIMAN MARCUS, NEIMAN-MARCUS, NEIMANS, LAST CALL, BERGDORF GOODMAN, and HORCHOW trademarks ("Plaintiffs' Marks") which are under their control, and to transfer all domain names to Plaintiffs.

Final Judgment, ¶ 11.

As of this date, Defendants have neither transferred the domain names nor paid any portion of the monetary judgment.

Defendants' assets are comprised of Internet domain names currently registered through the Florida-based register Moniker Online Services, LLC ("Moniker"). While these domain names currently reside in Defendants' account at Moniker, with just a few key strokes and within a few hours, Defendants have the ability to transfer the domain names to a registrar outside the State of Florida and the United States. As a result, with notice of this post-judgment proceeding, it is more than a likely possibility that Defendants will attempt to move the domain name assets outside of this Court's jurisdiction.

Exhibit 3
Page 11

Defendants have refused to appear before the Court in this case and obey its Orders. In light of Defendants' history in this case, there is a high risk that they will transfer their domain name portfolio currently managed through Moniker to another registrar outside the country if they have notice of this motion. Consequently, the Court finds that a receiver should be appointed to ensure compliance with the Final Judgment and that Plaintiffs' Motion and this Order may proceed ex parte and the file should be temporarily sealed until the domain names have been moved into an account controlled by the receiver.

Accordingly, it is hereby ORDERED AND ADJUDGED as follows:

1.   The Motion to Appoint Receiver is GRANTED. Bret A. Fausett, whose business address is Library Tower, 33 W. Fifth Street, Suite 1100, Los Angeles, CA 90071, is APPOINTED as the post-judgment receiver ("Receiver"). The Receiver shall perform the following:

    A.   The Receiver shall promptly file his Oath of Receiver with the Court, whereby he shall undertake fully and faithfully to perform his duties as Receiver;

    B.   The Receiver is authorized to collect and take immediate possession and control of Defendants' domain name portfolio of currently managed by Moniker, shall deliver a certified copy of this Order to Moniker, and shall take all necessary steps to assist Moniker in the transfer of the domain name portfolio into an account controlled by the Receiver.

    C.   Within 20 days from obtaining possession and control of the domain name portfolio, the Receiver shall submit an inventory of the domain names;

3

Exhibit 3
Page 12

D.    Within 30 days from the date of the inventory, the Receiver shall submit his report outlining suggested procedures for valuing and liquidating the domain name portfolio for consideration and approval by this Court;

E.    Thereafter, the Receiver shall prepare, within twenty (20) calendar days after the end of each calendar month, a full and complete report, under oath, setting forth all matters undertaken to transfer and protect the value of the domain name portfolio that occurred during the period covered by the report. The Receiver is directed to serve a copy of each report on all parties;

F.    Within 30 days from the conclusion of the liquidation process for the domain name portfolio, the Receiver shall submit his request for authorization to disburse the proceeds to Plaintiff or others claiming entitlement to the proceeds, if any;

G.    The Receiver shall act in accordance with and shall have all of the usual, necessary and incidental powers of a receiver to maintain and preserve Defendants' domain name portfolio;

H.    Neiman Marcus may advance costs necessary to the Receiver for the performance of his duties under this Order. These costs, if any, shall be included in the statement of account required under Paragraph I below;

I.    The Receiver's fees and costs and costs advanced by Neiman Marcus shall constitute taxable costs for which Defendants are responsible for paying; The Receiver may charge as fees for his and/or his staff's standard hourly

4

Exhibit 3
Page 13

rate in an amount not to exceed $425.00, plus reimbursement of costs for
the Receiver's services. At the conclusion of the liquidation procedures,
the Receiver shall file a statement of account with the Court and serve a
copy on all parties. The parties have 10 days following service of the
statement of account to file and serve objections, if any. The Court will
review the statement of account and enter a final award of fees and
expenses as the full, fair and final value of the Receiver's services;

J.    All fees for the Receiver shall be paid from revenue generated by the
domain name portfolio or from proceeds from the liquidation of the
domain name portfolio;

K.    Discharge of the Receiver shall require Court Order after a properly
noticed motion approving the Receiver's Final Report and Accounting is
filed with the Court and served on the parties;

L.    The Receiver is directed to obtain a bond in the amount of $5000.00,
securing performance by the Receiver of the duties and obligations of his
office of receivership. The bond shall provide coverage to Plaintiffs and
Defendants for loss due to acts of any agent, servant or employee of the
Receiver. However, the Receiver shall not be personally liable for losses
provided that the Receiver has acted in good faith to perform his duties
and has not committed gross negligence or other gross misconduct. The
bond shall be submitted to the Clerk of Court within 10 days of the date of
this Order.

5

Exhibit 3
Page 14

2.     Moniker is ordered to transfer all domain names associated with Defendants into
an account controlled by the Receiver without providing prior notice to Judgment
Debtor.

3.     The Motion to Seal is GRANTED. The Motion and this Order shall remain
sealed until the domain names in Defendants' portfolio managed by Moniker are
moved into an account controlled by the Receiver.

4.     This Order takes effect immediately upon entry.

DONE AND ORDERED in Chambers, at Fort Lauderdale, Broward County, Florida, this
23rd day of September, 2009.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:

Counsel of record

Jacob Rivard
a/k/a Shaun Waller a/k/a G.H. Wagenaars a/k/a H.W. Barnes
483 E. 9th Street, Apt. A
Reno, NV 89512

Net41 Media Corp.
c/o its Registered Agent
Business Filings, Inc.
6100 Neil Road, Suite 500
Reno, NV 89511

6

Exhibit 3
Page 15

Exhibit 4

** E-filed 5/13/2009 **

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| VERIZON CALIFORNIA INC.; VERIZON TRADEMARK SERVICES LLC; and VERIZON LICENSING COMPANY, | Case Number C 08-2832-JF RS |
| Plaintiffs, | ORDER APPOINTING RECEIVER[1] |
| v. | [re: docket nos. 99, 103, 104, 106] |
| ONLINENIC INC.; and DOES 1-10, | |
| Defendant. | |

Good cause therefore appearing, IT IS HEREBY ORDERED that Bret A. Fausett, Esq. be appointed as a receiver ("Receiver") of Defendant OnlineNIC Inc. ("OnlineNIC") for the purpose of determining whether the transfers of domain names from OnlineNIC to any other registrar between February 27, 2009 and March 14, 2009 (the "Transferred Domains") violated the terms of any order issued by the Court.

To aid the Receiver in making this determination, OnlineNIC shall, within fourteen calendar days of the date this Order, provide the Receiver and Plaintiff's counsel with the following documents in their native electronic format:

1.      The daily transfer logs from any registry operator for each domain name

Exhibit 4

Page 16

---

[1] This disposition is not designated for publication in the official reports.

1   transferred from OnlineNIC to any other registrar from August 1, 2008 to March

2   14, 2009;

3   2.   The WHOIS data for the registrant of the domain name seeking the transfer from

4        OnlineNIC to any other registrar from August 1, 2008 to March 14, 2009;

5   3.   A list of all domain names registered with OnlineNIC by that registrant;

6   4.   The account data maintained by OnlineNIC for each OnlineNIC account from

7        which a Transferred Domain was transferred;

8   5.   A list of all domain names registered with OnlineNIC by that account holder; and

9   6.   All written communication between OnlineNIC (including any officers, directors,

10       employees, representatives, agents, an affiliated companies of OnlineNIC, and all

11       other persons, firms or entities acting in concert or participating with OnlineNIC,

12       either directly or indirectly) and the registrant or account holder relating to any

13       request to transfer any domain name from OnlineNIC to any other registrar from

14       August 1, 2008 to March 14, 2009.

15   The Receiver may request additional documentation from OnlineNIC if he believes that

16   such documentation is reasonably necessary to aid him in his determination.  OnlineNIC shall

17   provide such additional documents to the Receiver and counsel for Plaintiffs within one week

18   following any request therefor.

19   The Receiver shall advise the Court if he concludes that the transfer of any domain name

20   from OnlineNIC to any other registrar between February 27, 2009 and March 14, 2009 violated

21   this Court's orders.

22   IT IS FURTHER ORDERED that the fees and costs of the Receiver's evaluation shall be

23   paid by OnlineNIC.  Any fees and costs of the Receiver pursuant to the Modified Injunction

24   issued concurrently herewith shall be paid by Plaintiffs, subject to this Court's jurisdiction to

25   apportion these fees and costs at a later time.

26

27

28

**Exhibit 4**
**Page 17**

2

Case No. C 08-2832-JF (RS)
ORDER APPOINTING RECEIVER
(JFEx2)

IT IS SO ORDERED.

DATED: May 13, 2009

_____
JEREMY FOGEL
United States District Judge

Exhibit 4
Page 18

3

1  This Order has been served upon the following persons:

2  David Jefferson Steele          david.steele@cph.com

3                                  djslit@cph.com

4  Gary Scott Dukarich            gsd@cph.com
                                   kristen.geraci@cph.com

5  Howard Alan Kroll              howard.kroll@cph.com

6                                  susan.lovelace@cph.com

   Perry J. Narancic              pnarancic@nk-pc.com
7  Sarah B. Deutsch               sarah.b.deutsch@verizon.com

8  Scott R. Mosko                 scott.mosko@finnegan.com

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit 4**
**Page 19**

4