STEPHEN H. STURGEON, JR.
Email: shs@sturgeonfirm.com
MID-ATLANTIC LAW GROUP, P.C.
11116 Hurdle Hill Drive,
Potomac, Maryland  20854
Telephone:  (301) 983-6111
Facsimile:  (202) 595-7806

MELODIE K. LARSEN (SBN 110819)
E-mail:  mlarsen@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
444 South Flower Street, Suite 2400
Los Angeles, CA  90071-2953
Telephone:  213.236.0600
Facsimile:  213.236.2700

Attorneys for Defendant
Naresh Malik, A/K/A Nick M.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERIZON CALIFORNIA INC.; VERIZON TRADEMARK SERVICES LLC; and VERIZON LICENSING COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>LEAD NETWORKS DOMAINS PRIVATE LIMITED; NARESH MALIK AKA NICK M; MAHESH MALIK; KEVIN DASTE; and DOES 1-100,<br><br>Defendants. | Case No.  CV-09-cv-00613 ABC-(CWx)<br><br>Hon. Audrey B. Collins<br><br>**OBJECTION OF NARESH MALIK TO THE APPOINTMENT OF PERMANENT RECEIVER** |

# TABLE OF CONTENTS

Page

I. OBJECTION TO THE APPOINTMENT OF A PERMANENT RECEIVER ............................................................................................. 1

II. THERE ARE ERRORS IN THE PROCESS BY WHICH THE JUDGMENTS HAVE BEEN OBTAINED AND THE RECEIVER HAS BEEN APPOINTED ............................................................................. 1

    A. Not Valid Service of Process on Defendant .................................. 3

    B. Invalidity of the Entry of Default Judgment on Defendant .......... 3

    C. Not Valid Service of Process on Lead Networks .......................... 4

    D. Invalidity of the Entry of Default Against Lead Networks .......... 6

    E. Invalidity of the Entry of the Default Judgment Against Lead Networks ........................................................................................ 6

    F. Initial Appointment of Receiver Conducted without Opportunity for Objection .................................................................................. 7

    G. The Court Does Not Have Authority Over the Indian Corporation .................................................................................... 7

III. THE ORDER IS EXCESSIVE IN SCOPE ................................................ 8

IV. THE RECEIVER HAS ACTED INAPPROPRIATELY AND SHOULD NOT BE APPOINTED AS A PERMANENT RECEIVER .......... 9

    A. The Receiver Has Caused the Loss of a Valuable Asset of Lead Networks ........................................................................................ 9

    B. The Receiver Has Been Improperly Monetizing the Domain Names ........................................................................................... 10

    C. The Receiver Has Sold Trademarked Domain Names ............... 10

    D. The Receiver Has Transferred Management of Domain Names Without Compensation to Lead Networks ................................... 11

    E. The Receiver Not Complied with the Requirements of the Order that Appointed him as Receiver .................................................. 11

    F. The Receiver Improperly Solicits Buyers ................................... 11

V. THE DEFENDANT SHOULD BE GIVEN THE OPPORTUNITY TO SUPPLEMENT HIS OBJECTION .......................................................... 12

VI. CONCLUSION ....................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**STATE STATUTES**

California Code of Civil Procedure § 708.620 ..................................................... 9

**RULES**

Fed. R. Civ. P. 55(a) .......................................................................................... 4, 5

In response to the Order to Show Cause Regarding the Appointment of Permanent Receiver entered in this proceeding on March 14, 2011, Naresh Malik ("Defendant") files this Objection to the Appointment of a Permanent Receiver.

Concurrent with this filing, Defendant is filing a Motion for Enlargement of Time to Object in order to be permitted to have additional time to prepare a more thorough Objection. Defendant only recently received information about the Order to Show Cause and has therefore not had sufficient time to prepare a complete and thorough objection.

Defendant submits this Objection specially, without agreeing to the jurisdiction or the venue of this court and without agreeing to the adequacy of service of process that was allegedly served on him on January 29, 2009. In fact, Defendant specifically denies and objects to the Plaintiff's allegations that there has been proper service of process as described herein.

## I. **OBJECTION TO THE APPOINTMENT OF A PERMANENT RECEIVER**

There are three principal bases for Defendant's objection, as follows:

1) There are errors in the process by which the judgments have been obtained and by which the receiver has been appointed. Consequently, the Order that results from the flawed process should not be issued,

2) The proposed Order is excessive in its scope, and

3) The current Receiver has engaged in numerous inappropriate and unfair activities as Receiver. Therefore, the Receiver should not be permitted to continue as the Receiver and should not be appointed as a permanent Receiver.

The details of these three principal objections are as follows:

//
//

## II. THERE ARE ERRORS IN THE PROCESS BY WHICH THE JUDGMENTS HAVE BEEN OBTAINED AND THE RECEIVER HAS BEEN APPOINTED

Defendant suggests that the process that has been followed, if upheld as valid, establishes an unfortunate precedent. In summary, the sequence of events has been as follows:

1) Plaintiff filed a lawsuit under seal against Lead Networks Private Limited ("Lead Networks"), an Indian corporation and against two individuals who were citizens and residents of other countries (Dec. Naresh Malik, section 1).

2) When Defendant (a citizen of India and a resident of the United Arab Emirates) was visiting California, there was a defective attempt to serve him with service of process.

3) Without proof, the Plaintiff alleged that the Defendant was the proper person upon whom there can be valid service of process on the Indian corporation.

4) The Defendant attempted to make a *pro se* submission to the court to defend himself, but the submission was rejected by the court.

5) In spite of the fact that the Defendant had submitted documents to the court in an attempt to defend himself, the court determined that he "failed to plead or otherwise defend" and entered a default judgment against him in the amount of more than $23 million dollars.

6) The court, under seal, considered and issued an order giving to a receiver total and complete authority over the Indian corporation Lead Networks. When the sealed order was made public, it was revealed that all relevant parties were enjoined (1) from attempting to represent and defend the Indian corporation from the litigation claims and (2) from attempting to engage in any action on behalf of the Indian corporation.

7) The receiver proceeded (1) to engage in activities which caused the Indian corporation to lose its most valuable asset (its registrar accreditation), (2) to

engage in other activities to utilize the Indian corporation and its assets to enrich himself and (3) to engage in additional activities that were in contravention of the order.

8) The Plaintiff then requested that the court appoint the receiver as the permanent receiver of the Indian corporation so that all of the assets of the Indian corporation could be sold for the enrichment of the receiver and for the enrichment of the Plaintiff. However, the defendant Indian corporation has not been able to be defended in the proceeding because the court has enjoined all parties from representing, defending and protecting the Indian corporation from the lawsuit claims and from the liquidation of its assets (i.e., they are enjoined by the previous receivership order that was issued under seal).

It is respectfully submitted that this sequence of events, if permitted to continue unabated, establishes a truly unfortunate precedent. It is respectfully requested that the Order not be issued, that the initial Order be vacated and that the Receiver not be appointed as a permanent receiver.

A more detailed description of the sequence of events leading to this objection by the Defendant is as follows:

### A. <u>Not Valid Service of Process on Defendant</u>

Defendant attests that there was not proper service on the Defendant as alleged in Plaintiff's filing on January 30, 2009. (Dec. Naresh Malik, Section 3). When Defendant became aware that the Plaintiff had alleged that the Defendant had been served, Defendant hired an investigator in order to obtain additional information about the circumstances surrounding the alleged service of process. The investigator interviewed the security and loss prevention officer who worked in the security department of the hotel in which the service of process was alleged to have occurred. A description of the interview of the security officer and the attestations of Defendant are set forth in the Declaration of Naresh Malik (section 5). Defendant denies that service of process was delivered to him. Defendant

attests that the statement signed by the individual who allegedly delivered the service of process is untrue. (Dec. Naresh Malik, section 3).

### B. Invalidity of the Entry of Default Judgment on Defendant.

In the alternative, if the court determines (contrary to the foregoing position of Defendant) that there was, in fact, adequate service of process on Defendant, then Defendant points out that there was error when the court clerk entered a default against Defendant. The entry of a default by the court clerk was invalid because, according to Fed. R. Civ. P. 55(a), a default can be entered when a party "has failed to plead or otherwise defend." If the court determines that there was adequate service, then Defendant points out that that Defendant did, in fact, "plead or otherwise defend" by submitting documents to the court that were rejected. Fed. R. Civ. P. 55(a) provides as follows:

> (a) ENTERING A DEFAULT. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.

Although Defendant's principal position is that there was not adequate service, if the court determines that there was adequate service, then Defendant alleges that the subsequent entry of default was invalid because there had been, in fact, a pro se submission in the proceeding by Defendant, but that pro se submission had been rejected by the Court. Defendant was thereby denied the opportunity to defend himself pro se. Defendant notes that docket entry 56 and 57 on March 9, 2009 state that the documents filed by Defendant were not entered and were rejected. Therefore, the court acknowledged that there was a submission. Consequently, since Defendant did, in fact, "plead or otherwise defend" then there could not (according to Fed. R. Civ. P. 55(a)) be a proper entry of default. Since the entry of default was in error, the subsequent entry of a default judgment was invalid and of no effect.

### C. Not Valid Service of Process on Lead Networks

There was also not proper service of process on the corporate entity Lead Networks as alleged in Plaintiff's filing of February 26, 2009 (Docket Document # 52). Attached as Exhibit A to the Declaration of Stephen H. Sturgeon ("Sturgeon Declaration") is a copy of the document that Plaintiff submitted as "proof of service." It is the standard form document entitled "Proof of Service Complaint and Summons". (Docket Document 52-2 Filed 02/26/09)  In section 2 of the document, the first line reads "Person Served".  On the next line there is a check mark on the line reading "Person Served" and in handwriting is written "Lead Networks Domains Private Limited.  This alleged service of process is invalid on its face.  The corporation is not a person to whom the documents were delivered.

Although it was not filed with the Plaintiff's "Application for Clerk to Enter Default" (Docket Document 52-2 Filed 02/26/09), the Plaintiff had previously filed docket document #47 on February 25, 2009 (attached as Exhibit B to the Sturgeon Declaration) which is labeled as "Corrected Proof of Service".  However, it was not filed with the required declaration as required by F.R.Civ. P. 55(a) and  it was rejected by the court because it did not include a declaration.  This "Corrected" document is a form document with typing instead of handwriting.  It lists the person served as "Naresh Malik a/k/a Nick M, Managing/General Agent of Lead Networks Domains Private Limited."   In fact, Defendant is not and never has been "Managing/General Agent of Lead Networks Domains Private Limited" (Dec. Naresh Malik, section 4).  Furthermore, Defendant is not a person upon whom service of process could be delivered in order to effectuate valid service of process on Lead Networks, a corporation which was incorporated and formed in India.( Dec. Naresh Malik, section 7) The only basis that Plaintiff has provided for its allegation of the adequacy of the service of process is the reference in a service document that merely describes Defendant as "Naresh Malik a/k/a Nick M, Managing/General Agent of Lead Networks Domains Private Limited."  Plaintiff

has not provided any probative evidence that Defendant was, in fact, "the Managing/General Agent of Lead Networks Domains Private Limited". The Plaintiff has also not submitted any proof that the delivery of service of process (that occurred in California) to a "Managing/General Agent" is valid service of process on an Indian corporation. Furthermore, Defendant attests that he is not an employee, director, officer, shareholder or any other type of representative of Lead Networks upon whom service of process can be delivered in order to serve the Indian corporation (Dec. of Naresh Malik, section 7).

### D. Invalidity of the Entry of Default Against Lead Networks.

The court clerk's entry of default against Lead Networks was also invalid (docket entry 53 on February 27, 2009) since the court clerk is not authorized to enter default on a foreign entity (docket entry 115 on August 18, 2010 states that the "Clerk is not authorized to enter default on a foreign entity"). Therefore, the entry of default on Lead Networks and the consequent default judgment with respect to Lead Networks are invalid and of no effect. However, no person has been able to represent Lead Networks in this proceeding to challenge the adequacy of the service, to challenge the adequacy of the entry of default or to challenge the adequacy of the entry of the default judgment because the current Order enjoins relevant parties from attempting to represent Lead Networks.

### E. Invalidity of the Entry of the Default Judgment Against Lead Networks.

The default judgment entered against Lead Networks by order dated September 22, 2009, docket entry 83 was also invalid. Since the clerk was not authorized to enter a default on a foreign entity, the consequent entry of a default judgment was invalid. However, no person has been able to represent Lead Networks in this proceeding to challenge the adequacy of the service, the adequacy of the entry of default or the adequacy of the entry of the default judgment because the current Order enjoins relevant parties from attempting to represent Lead

Networks. Although a default judgment was entered against Lead Networks, it would have been possible for Lead Networks to challenge the default judgment if it had been possible for Lead Networks to be represented in court (rather than being restricted from challenging the default judgment because all relevant parties were enjoined from representing Lead Networks in this proceeding).

### F. Initial Appointment of Receiver Conducted without Opportunity for Objection

The Order for Appointment of Receiver dated December 4, 2009 (under seal) was issued without an opportunity for objection. Since the Order was under seal, it was not possible for any party to object to it. Then when the order was made public, it was revealed that the wording of the Order stated that all relevant parties are relieved of their power to act on behalf of Lead Networks and are enjoined from attempting to act on behalf of Lead Networks. The initial order dated December 4, 2009 reads as follows:

> **IT IS FURTHER ORDERED** that all current officers, directors, managers, agents, employees, and/or attorneys of or for Lead Networks and all persons in active concert with any of the foregoing (collectively, "Relieved Management") be, and hereby are, relieved of any and all authority or power to bind or act for or on behalf of Lead Networks, including any authority or power to exercise any of Lead Networks' legal or corporate power under any and all contracts, accreditations, memoranda of understanding, letters of credit, bank accounts, books of account, or other legal instruments, and Relieved Management and each of them are hereby enjoined and restrained from attempting to so bind or act for or on behalf of Lead Networks.[emphasis added]

Consequently, no relevant party had an opportunity to object to the proposed order prior to its entry (since it was sealed) and no relevant party had an opportunity to object to the order after it was entered (because all parties were specifically enjoined from objecting on behalf of Lead Networks). Therefore, the foreign corporation was denied an opportunity to be represented in the proceeding.

G. **The Court Does Not Have Authority Over the Indian Corporation.**

The court did not have jurisdiction or authority over the Indian corporation, Lead Networks, that would give the court the authority to enjoin all parties from acting on behalf of the corporation (including filing an objection or pleading on its behalf) and then to appoint a receiver to liquidate the company and sell all of its assets without the entry of a valid default and without the entry of a valid default judgment.

## III. THE ORDER IS EXCESSIVE IN SCOPE

The Initial Order and this Show Cause Order effectively transfer all corporate powers of the Indian corporation to the Receiver and enjoins any relevant person from attempting to exercise any legal power of the Indian corporation. It is respectfully suggested that this transfer of complete control of a foreign corporation to a U. S. receiver is excessive and, to the knowledge of Defendant, unprecedented. The precedents cited by Plaintiff involve the transfer of control with respect to domain names or portfolios of domain names, but not the transfer of complete control of a foreign corporation. The relevant provisions in the Initial Order and the Show Cause Order are as follows:

> …all current officers, directors, managers, agents, employees, and/or attorneys… relieved of any and all authority or power… to exercise any of Lead Networks' legal or corporate power… are hereby enjoined and restrained from attempting to so bind or act for or on behalf of Lead Networks.

A particular concern is that the foreign corporate entity cannot be represented in this legal proceeding in order for the corporation to be entitled to a fair hearing. The initial Order for the appointment of receiver was issued under seal. Since it was submitted, considered and issued under seal, the corporate entity Lead Networks did not have an opportunity to object. The wording of this first order was identical to the wording of this second order in that all control of the Indian corporation was given to the Receiver and all parties were enjoined from

representing the corporate entity in this proceeding in order for the Indian corporation to have a fair hearing. Consequently, an order transferring all control over the corporation was suddenly issued and an injunction prohibited the corporate entity from having a fair hearing.

Accordingly, Defendant objects to the initial Order and this Show Cause Order because they are excessive in scope.

### IV. THE RECEIVER HAS ACTED INAPPROPRIATELY AND SHOULD NOT BE APPOINTED AS A PERMANENT RECEIVER

The third principal reason that Defendant objects to the proposed permanent appointment of the Receiver is that the Receiver has not acted in good faith, has acted in an unfair manner and has not acted in accordance with the previous order of appointment of the Receiver.

Authority for the appointment of a receiver is found in California Code of Civil Procedure section 708.620 which allows the Court to appoint a receiver to aid in recovery of a money judgment, in certain circumstances. It provides:

> "The court may appoint a receiver to enforce the judgment where the judgment creditor shows that, considering the interests of both the judgment creditor and the judgment debtor, the appointment of a receiver is a reasonable method to obtain the fair and orderly satisfaction of the judgment." § 708.620.

It is respectfully suggested that the issuance of the order in this case appointing the receiver as a permanent receiver is not a fair method to obtain a satisfaction of the judgment for several reasons, as follows:

#### A. The Receiver Has Caused the Loss of a Valuable Asset of Lead Networks.

One of the most valuable assets of Lead Networks was the corporation's accreditation as a domain name registrar. At the time that the Receiver was initially appointed, there was an ongoing arbitration proceeding before the American Arbitration Association. The arbitration proceeding had been initiated in order for

there to be a determination with respect to the continuing accreditation status of Lead Networks. When the receiver was appointed as temporary Receiver and given complete control and authority over Lead Networks, he proceeded to use his authority to terminate the arbitration proceeding. Consequently, the domain name registrar status of Lead Networks was lost. A valuable asset of the foreign corporation was lost as a result of the actions of the Receiver.

### B. The Receiver Has Been Improperly Monetizing the Domain Names.

The receiver changed the name servers and started monetizing the trademarked domains with a "domain name parking company" by the name of Domain Sponsor. When a domain name is placed with a domain name parking company, the parking company places various advertisements on the domain name. The advertisers then pay the parking company for the "hits" when the advertisement is clicked and/or when a product is purchased as a result of the advertisement. Depending on the arrangement between the parking company and the owner of the domain name, a percentage of the revenue from the advertising may be paid to the owner of the domain name. Upon information and belief, the Receiver has, therefore, collected the income from the use of the domain names to attract persons to the advertisements. Consequently, upon information and belief, the Receiver has been engaged in the same activity which was allegedly undertaken by the previous domain owners ie, obtaining revenue from the use of the domain names to attract persons who may view the domain names as a result of searches or typing of the trademarked terms contained in the domain names. The Plaintiff has alleged that this type activity is a violation of trademark laws. By the same logic utilized by Plaintiff, if the act of the previous domain owners was a violation of the trademark laws, then the activities of the Receiver are also a violation of the trademark laws. Accordingly, the Receiver has been acting inappropriately, should not be permitted to continue as the Receiver and should not be appointed as a

permanent Receiver.

### C. The Receiver Has Sold Trademarked Domain Names

Upon information and belief, the receiver has sold domain names containing trademarks to entities who are not the trademark owners in contravention of the order of the Court. Examples are as follows: myxter.com; myxerstune.com; olayhousedisney.com; and sketchersboots.com

### D. The Receiver Has Transferred Management of Domain Names Without Compensation to Lead Networks.

The Receiver has given the management of the domain names of Lead Networks to another registrar without any compensation payable to Lead Networks. A fee of $15 per domain name could have been obtained on behalf of Lead Networks since receiver had offers from companies to pay compensation in this amount to Lead Networks. (See Declaration of Naresh Malik, section 9)

### E. The Receiver Not Complied with the Requirements of the Order that Appointed him as Receiver.

Attached as Exhibit C to the Sturgeon Declaration is a copy of an article that describes and documents some of the improprieties of the Receiver. The article describes how the domain name ExxonMobileCard.com was (1) registered in the name of the Receiver as of March 17, 2010, (2) transferred to Dynadot registrar by the Receiver and (3) not renewed by the Receiver and (4) expired on December 20, 2010. This description shows that the Receiver has not complied with the terms of the initial Order. He has not transferred trademarked domains to the trademark owner as required by the initial Order. Instead, the Receiver has negligently let the domain names expire without renewal.

### F. The Receiver Improperly Solicits Buyers.

The Receiver continues to solicit buyers by placing "for sale" advertisements" on domain names in contravention of the order by which he has been granted Receivership authority. Attached as Exhibit D to the Sturgeon

Declaration is a screen shot displaying the Receiver's "for sale" offerings of the following domain names that contain famous trademarks: bankofbroada.com; elizabethardenperfumes.com; bancopopularpr.com; avongroups.com; jamesaverycharms.com; maltayellowpages.com and samsungunlock.com

Additional investigation is being conducted to identify and document additional inappropriate activities of the Receiver.

## V. THE DEFENDANT SHOULD BE GIVEN THE OPPORTUNITY TO SUPPLEMENT HIS OBJECTION.

Defendant only recently received information about the Order to Show Cause (on April 4, 2011) and has therefore not had sufficient time to retain counsel, research the situation and have a complete and thorough objection prepared. Furthermore, since the objection points out the fact that the Receiver has engaged in numerous improprieties, additional time will be needed for the Defendant to further investigate the activities of the Receiver in order to bring to the court's attention the number and magnitude of the improper activities of the Receiver. Defendant will also need additional time to research and prepare more thorough argumentation in support of the points that are raised by Defendant's objections.

Accordingly, the Defendant respectfully requests that he be granted leave to file a "Supplement To the Objection Of Naresh Malik To The Appointment Of Permanent Receiver" within fourteen days of this date or by such other date as this court may permit.

## VI. CONCLUSION

A described herein, Defendant objects to the appointment of the current Receiver as a permanent receiver. Defendant suggests that there are flaws in the process that has resulted in the Receivership and the actions of the Receiver. Furthermore, Defendant suggests that the Receiver has engaged in certain actions that are inappropriate and, consequently, the current Receiver should not be permitted to continue as a Receiver in this proceeding. It is respectfully requested

that Defendant's comments and objections be considered in the decision with respect to the appointment of the Receiver as a permanent receiver and that, to the extent necessary, Defendant be permitted to supplement his objections. As described above in Section 2 on page 9, it is respectfully suggested that the current Order and the Show Cause Order are excessive in scope, especially since the Orders enjoins parties from representing Lead Networks in this proceeding and denies a fair, due process determination with respect to the claims against Lead Networks and with respect to the validity of the default judgment. Accordingly, it is requested that the Orders (or certain excessive portions of the Orders) be vacated or stricken.

Dated: April 13, 2011

STEPHEN H. STURGEON, JR.
MID-ATLANTIC LAW GROUP, P.C.

and

MELODIE K. LARSEN
BURKE, WILLIAMS & SORENSEN, LLP

By: *Melodie K Larsen*
MELODIE K. LARSEN
Attorneys for Defendant
Naresh Malik, A/K/A Nick M.

LA #4842-1728-2057 v1 — - 13 - — OBJECTION OF NARESH MALIK TO THE APPOINTMENT OF PERMANENT RECEIVER